**THIRD DIVISION**
**GOBEIL, J.,**
**COOMER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 28, 2019**

# In the Court of Appeals of Georgia

A18A1544. PREFERRED WOMEN'S HEALTHCARE, LLC et al.
    v. SAIN et al.

HODGES, Judge.

Jason Sain brought this medical malpractice wrongful death action in the State Court of Gwinnett County against Preferred Women's Healthcare, LLC ("PWH") and the representative of the estate of Byron Dickerson, M.D., a physician at the practice who provided medical care to Sain's wife, Debbie Sain, during her pregnancy in 2012.[1] After a hearing, the trial court granted Sain's motion to amend the complaint to add another PWH physician, Audrey Arona, M.D., as a party defendant. This Court granted the application for interlocutory appeal filed by Arona and PWH to consider the appellants' argument that the amendment to the complaint constituted the bringing of an action and that, because Sain filed his motion to amend more than five

---

[1] Jason Sain filed this action in his individual capacity and as the representative of his minor son and his wife's estate. Other defendants were also named in Sain's complaint, but the appealed order did not pertain to them and they are not participating in this appeal.

years after Arona's alleged negligence, the amendment was barred by Georgia's medical malpractice statute of repose. For the reasons explained below, we reverse.

Under OCGA § 9-11-21, a party may be dropped or added to a pending civil action at any stage of the action "by order of the court on motion of any party or of its own initiative and on such terms as are just." Generally, a trial court's decision as to whether a party to a pending lawsuit should be permitted to add a party to the suit "lies in the court's sound discretion and will be overturned on appeal only upon a showing of abuse of that discretion." (Citation and punctuation omitted.) *Rasheed v. Klopp Enterprises*, 276 Ga. App. 91, 92 (1) (622 SE2d 442) (2005). As explained below, this case presents the threshold question of whether the medical malpractice statute of repose prevents the trial court from exercising its discretion under OCGA § 9-11-21 when, as in this case, a plaintiff seeks to amend the complaint in his pending medical malpractice action to add a party defendant more than five years after that particular defendant's alleged professional negligence. Our review of this legal question is de novo. *Fisher v. Gala*, 325 Ga. App. 800, 802 (754 SE2d 160) (2014), aff'd, 296 Ga. 870 (770 SE2d 879) (2015).

The following facts are undisputed unless otherwise noted. In early 2012, the decedent, Debbie Sain, began receiving medical care at PWH, which included

2

prenatal care after she became pregnant. During PWH visits on April 3, 10, and 20, 2012, sonograms were performed. Each of those sonograms showed no right ovary and showed a large complex mass on the decedent's right adnexa (the structure adjoining the uterus that holds the uterus in place). Discovery of the mass was not disclosed to the decedent or Sain or included as an issue to be addressed in the "OB Problem List" in PWH's medical records.

On November 20, 2012, the decedent went into labor. The PWH physician on call was Mary Long, M.D., who delivered the decedent's baby by C-section the next morning. Six weeks after giving birth, the decedent had abdominal pain and went to the Gwinnett Medical Center ER. After a scan of the decedent's abdomen revealed a large right adnexal mass and a large amount of free fluid in her abdomen, the ER physician called Dickerson, and Dickerson admitted the decedent for exploratory surgery. During surgery, Dickerson discovered that the mass identified early in the decedent's pregnancy had ruptured, releasing over 500 mL of its contents into her abdominal cavity. Pathology identified the mass as a squamous cell carcinoma of the right ovary. Subsequent imaging and surgery revealed that the malignancy had spread from the original site to other structures in the decedent's pelvis and abdomen. In December 2013, the decedent died as a result of her metastatic cancer.

In July 2014, Sain filed a wrongful death action against PWH, Dickerson's estate,[2] Long (the PWH doctor who performed the decedent's c-section), and other defendants, alleging that the failure to diagnose and treat the adnexal mass during the decedent's prenatal and peripartum care caused her death. The verified complaint alleged that, on April 3, 2012, the decedent sought medical care at PWH, with Dickerson "being assigned to provide obstetrical medical care during the pregnancy." The complaint alleged that ultrasounds taken at PWH identified a mass in the right adnexa without a right ovary being observed and that such findings were never communicated to the decedent or her husband.

In February 2017, Sain's counsel deposed the PWH sonographer who performed the April 2012 ultrasounds; she testified that she believed that a "squiggly line" on ultrasound reports was Arona's handwritten initial "A." According to Sain, this is when he first learned that, in addition to Dickerson's care at PWH, Arona had ordered and reviewed two of the April 2012 ultrasounds. In May 2017, the plaintiffs deposed Arona, who confirmed that she saw the decedent for two of her three office visits in April 2012, ordered ultrasounds during those visits, reviewed the sonographer's report, and saw the mass.

---

[2] Dickerson died in October 2013, so his estate was named as a defendant.

4

In June 2017, Sain filed a motion to amend his complaint to add Arona as a party defendant. Arona and the other defendants objected, arguing that the medical malpractice statute of repose barred such an amendment more than five years after Arona's alleged negligence in April 2012. The trial court determined that the amendment related back to the timely-filed complaint and granted the motion allowing the amendment.

The appellants contend that the medical malpractice statute of repose absolutely prevents a plaintiff from amending the complaint in his pending medical malpractice action to add an individual party defendant more than five years after the alleged malpractice.[3] This is a question of first impression in Georgia. OCGA § 9-3-71 (b), by which the General Assembly "intended to create a five-year statute of ultimate repose and abrogation" for medical malpractice actions,[4] provides:

> Notwithstanding subsection (a) of this Code section[, which creates a two-year statute of limitation for medical malpractice actions], in no event may an action for medical malpractice be brought more than five

---

[3] OCGA § 9-3-70 defines an "action for medical malpractice" as "any claim for damages resulting from the death of or injury to any person arising out of" certain conduct including "[h]ealth, medical, dental, or surgical service, diagnosis, prescription, treatment, or care."

[4] OCGA § 9-3-71 (c).

years after the date on which the negligent or wrongful act or omission occurred.[5]

Thus, the distinct question before us is whether amending a complaint in a pending medical malpractice action to add a party defendant constitutes "bringing" a medical malpractice action for purposes of the statute of repose.[6]

---

[5] As the Supreme Court of Georgia has explained:

> There is a distinct difference between statutes of limitation and statutes of repose. A statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues. A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. . . .
>
> A statute of repose stands as an unyielding barrier to a plaintiff's right of action. The statute of repose is absolute; the bar of the statute of limitation is contingent. The statute of repose destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists.

(Citations and punctuation omitted.) *Wright v. Robinson*, 262 Ga. 844, 845 (1) (426 SE2d 870) (1993).

[6] When this Court, as with any Georgia court,

> consider[s] the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. . . . Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013).

For civil actions generally, the Civil Practice Act provides: "A civil action is commenced by filing a complaint with the court." OCGA § 9-11-3 (a). Likewise, the medical malpractice statute of repose is concerned with when an action is commenced, that is, when the plaintiff initiates legal proceedings to recover damages. See *Wesley Chapel Foot & Ankle Center v. Johnson*, 286 Ga. App. 881, 883-884 (650 SE2d 387) (2007) (OCGA § 9-3-71 (b) "bars a plaintiff from initiating legal proceedings for damages arising out of any act of medical malpractice more than five years after the date on which the allegedly negligent diagnosis or care occurred.") (citation omitted), cert. denied, October 29, 2007.

Although we have not yet considered whether amending the complaint in a pending medical malpractice action to add a party defendant constitutes bringing a medical malpractice action for the purposes of the statute of repose, we have considered a related question: whether amending the complaint in a pending medical malpractice complaint to substitute a party *plaintiff* for the one who originally initiated legal proceedings constitutes bringing a medical malpractice action. In *Rooks v. Tenet Healthsystem GB, Inc.*, the sister of a decedent filed a complaint within five years of alleged medical malpractice, asserting a claim for wrongful death, purportedly as the representative of the decedent's surviving spouse; she also asserted

claims on behalf of the decedent's estate and the decedent's minor child. 292 Ga. App. 477, 480 (1) (b) (664 SE2d 861) (2008), cert. denied October 27, 2008. More than five years after the alleged professional negligence, the sister moved to amend the complaint to substitute the decedent's surviving spouse as the wrongful death plaintiff. Id. at 481 (1) (b). This Court reasoned that "the Civil Practice Act encourages liberality of pleading"[7] and, in OCGA § 9-11-17 (a), provides a remedy when an action is not prosecuted in the name of the real party in interest: objection by the defendant followed by reasonably prompt "ratification of commencement of the action by, or joinder or substitution of, the real party in interest[.]" We held that filing an amendment to substitute the real party in interest for the original plaintiff within a reasonable time of an objection did not constitute bringing an action under OCGA § 9-3-71 (b). *Rooks*, 292 Ga. App. at 480-481 (1) (b). Because a malpractice action including the claim for wrongful death was commenced in that case within the time allowed by the medical malpractice statute of repose, the amendment was not barred by the statute of repose. Id.[8]

---

[7] (Citations and punctuation omitted.) *Rooks v. Tenet Healthsystem GB, Inc.*, 292 Ga. App. at 479 (1) (a).

[8] See *Memar v. Styblo*, 293 Ga. App. 528, 530 (667 SE2d 388) (2008) (accord). OCGA § 9-11-17 also provides a remedy for a plaintiff who knows that he or she cannot

8

We have also considered whether amending the complaint in a pending medical malpractice action to add a claim arising out of the alleged professional negligence more than five years after the conduct at issue constitutes bringing an action for purposes of the statute of repose. In *Johnson*, an injured patient and his wife commenced a medical malpractice action within two years after allegedly negligent medical treatment. 286 Ga. App. 882. While the action was pending, the patient died. Id. More than five years after the allegedly negligent medical treatment, the patient's wife filed an amended complaint, asserting a new claim for wrongful death arising out of the same alleged medical malpractice. Id. This Court agreed with the trial court's determination that the statute of repose did not bar the amendment adding the wrongful death claim. Id. at 883-886. As we explained, when the plaintiff filed her amended complaint to add a wrongful death claim, she did not bring an action, i.e., initiate a new or separate lawsuit. Id. Rather, she amended the pending medical

---

identify the allegedly responsible party by name. See *Larson v. C. W. Matthews Contracting Co.*, 182 Ga. App. 356, 357 (1) (356 SE2d 35) (1987) (A plaintiff can name a "John Doe" defendant and otherwise identify the party and substitute the correct name later under OCGA § 9-11-17. The substitution of a named defendant for a John Doe identified in the complaint is not the addition of a party to the pending action and can be accomplished without leave of court under OCGA § 9-11-21.).

9

malpractice action to add a new claim arising from the same alleged negligence against the same defendants. Id. at 885.

The appellants contend that *Rooks* and *Johnson* do not support the trial court's ruling in this case. Specifically, they argue that, even if neither an amendment to substitute a new plaintiff for a malpractice claim in the pending action, nor an amendment to add a new malpractice claim against a defendant against whom a malpractice claim was pending, constitutes bringing an action, an amendment to a complaint to add a party defendant *does* constitute the bringing of an action for purposes of the statute of repose. Although we expressly did not rely on the "relation back" doctrine in *Rooks*[9] and *Johnson*,[10] the relation-back statute, OCGA § 9-11-15, and other statutes pertaining to amended pleadings, patently show that Georgia law

---

[9] 292 Ga. App. at 481 (1) (b).

[10] We explained that

[i]n affirming the trial court's ruling in [*Johnson*], we do not hold that Mrs. Johnson's wrongful death claim relates back to the filing of the original complaint. As we have explained, when Mrs. Johnson filed her amended complaint, she did not bring an action, i.e., initiate a new or separate lawsuit. Her wrongful death claim is "saved" (i.e., not barred by the statute of repose) because she and Mr. Johnson brought a timely medical malpractice action and because Mrs. Johnson's wrongful death claim was properly added to that same pending litigation.

286 Ga. App. at 884, n. 5.

has long recognized a qualitative difference between amending a complaint to join a defendant to a pending suit and other types of amended pleadings. OCGA § 9-11-15 (a) provides in pertinent part:

> A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order. Thereafter the party may amend his pleading only by leave of court or by written consent of the adverse party. Leave shall be freely given when justice so requires.[11]

It is well settled, however, that OCGA § 9-11-15 (a) must be read in pari materia with OCGA § 9-11-21, and our courts have held that leave of court is required whenever an amended complaint adds a new party defendant. *Western Sky Fin., LLC v. State of Ga.*, 300 Ga. 340, 357 (3) (a) (793 SE2d 357) (2016).[12] In addition, OCGA § 9-11-15

---

[11] See *Cartwright v. Fuji Photo Film U.S.A.*, 312 Ga. App. 890, 896 (3) (a) (720 SE2d 200) (2011) (Under OCGA § 9-11-15, a defendant who is added to a pending action under OCGA § 9-11-21 "is treated as if he or she were a party to the original action from its inception[,]" providing that the requirements of OCGA § 9-11-15 (c) are satisfied.) (citation and punctuation omitted).

[12] See also *La Mara X, Inc. v. Baden*, 340 Ga. App. 592, 594 (1) (798 SE2d 105) (2017) ("[A]s our appellate courts have held on numerous occasions, when a party seeks to amend his complaint to add a new party, OCGA § 9-11-15 (a) must be read in pari materia with OCGA § 9-11-21, which requires a court order to add or drop parties.").

(c) imposes additional requirements for amendment that add a defendant to a pending action. OCGA § 9-11-15 (c) provides:

> Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back to the date of the original pleadings if the foregoing provisions are satisfied, and if within the period provided by law for commencing the action against him the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

To understand why OCGA § 9-11-15 (c) treats an amendment to a complaint changing the party against whom a claim is asserted differently from other types of amendments, we look to the fundamental aims of Georgia's Civil Practice Act ("CPA"), OCGA § 9-11-1 et seq.[13] Generally, the CPA,

---

[13] *Block v. Voyager Life Ins. Co.*, 251 Ga. 162, 163 (1) (303 SE2d 742) (1983) (OCGA § 9-11-15 "provides for liberal amendments and this is consistent with [the Court's] holdings that the pleadings are not an end in themselves but only a method to assist in reaching the merits of the case.") (citation omitted).

advances liberality of pleading. Under OCGA § 9-11-8 (a) (2), an original complaint, or any other pleading that sets forth a claim for relief, shall contain "[a] short and plain statement of the claims showing that the pleader is entitled to relief; and . . . [a] demand for judgment for the relief to which the pleader deems himself entitled." Under this provision, a complaint need only provide fair notice of what the plaintiff's claim is and the grounds upon which it rests. Such notice pleading is the hallmark of and prescribed by the CPA, which abolished issue pleading.

(Citations and punctuation omitted.) *Tenet Healthsystem GB, Inc. v. Thomas*, 304 Ga. 86, 89 (816 SE2d 627) (2018).[14] Of course, a tort plaintiff does not demand judgment from all the world but from the persons or entities whom the plaintiff deems responsible for damages to him from the defendant's breach of a legal duty.[15] It

---

[14] See also *Dillingham v. Doctors Clinic*, 236 Ga. 302, 303 (223 SE2d 625) (1976) ("[T]he objective of the CPA is to avoid technicalities and to require only a short and plain statement of the claim that will give the defendant fair notice of what the claim is and a general indication of the type of litigation involved; the discovery process bears the burden of filling in details.") (citation and punctuation omitted).

[15] See OCGA §§ 51-1-1 ("A tort is the unlawful violation of a private legal right other than a mere breach of contract, express or implied. A tort may also be the violation of a public duty if, as a result of the violation, some special damage accrues to the individual."); 51-1-6 ("When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.").

follows that the persons or entities to whom a complaint must give notice are those from whom the plaintiff demands judgment.[16] We conclude, therefore, that a complaint that does not confront a certain party with the plaintiff's demand for judgment and the grounds therefore does not commence an action against that particular defendant.[17] The General Assembly enacted OCGA § 9-3-71 in the context of this concept of what constitutes the commencement of an action against a particular defendant. "Both logic and the plain language of the statutes lead us to conclude that the legislature never intended for [the amended pleadings and the nonjoinder of parties] statutes to overcome the statute of repose." *Wright v. Robinson*,

---

[16] See *Osprey Cove Real Estate v. Towerview Constr.*, 343 Ga. App. 436, 437 (808 SE2d 425) (2017) (The "short and plain statement" of claims in a complaint "must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading.") (citation and punctuation omitted); *Gosule v. Bestco, Inc.*, 227 Ga. App. 863, 866 (2) (a) (490 SE2d 532) (1997) ("Under the Georgia Civil Practice Act, pleadings need only give notice of what the adverse party may expect to meet, rather than to frame issues.") (citation and punctuation omitted); *Wade v. Polytech Indus.*, 202 Ga. App. 18, 21 (2) (413 SE2d 468) (1991) ("[A] complaint must give notice sufficient to allow responsive pleading[.]") (citation omitted).

[17] See *Tindol v. Boston Housing Auth.*, 487 NE2d 488, 491 (Mass. 1986) (Massachusetts Rule 15 (c), based on the corresponding federal rule providing for relation back of amended pleadings, does not permit the addition of a defendant after the period of the statute of repose regarding actions arising from improvements to real property had expired.); *James Ferrera & Sons, Inc. v. Samuels*, 486 NE2d 58, 60 (Mass. App. Ct. 1985) (accord).

14

262 Ga. 844, 845-846 (1) (426 SE2d 870) (1993).[18] It follows that Sain did not commence his action for medical malpractice against Arona until he amended his complaint to identify her as a party defendant, which was more than five years after her alleged negligence.

Sain contends that his action against Arona is not barred by the statute of repose, however, arguing that the purposes of the statute of repose were satisfied in this case. Specifically, he argues that the evidence shows that Arona reviewed the complaint at the beginning of the litigation, "had unfettered access to her own records, knew her care for the April 3rd and April 20th visits was implicated from the

---

[18] In *Wright v. Robinson*, the Supreme Court of Georgia looked to the plain language of the renewal statute and the statute of repose and the sequence of their adoption. Because the courts presume that the legislature enacts all statutes with knowledge of the existing laws, "the provisions of the statute enacted latest in time carry greater weight." (Citations omitted.) 262 Ga. at 846 (1). Former OCGA § 9-2-61 (a) (1967) provided that a plaintiff who dismisses a complaint may under circumstances recommence the case despite the expiration of the statutory limitation period and that the "renewed case shall stand upon the same footing as to limitation with the original case." See Ga. L. 1985, p. 1446, § 1 (amending OCGA § 9-2-61 (a)). OCGA § 9-3-71(b) provides that "in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred." "Both logic and the plain language of the statutes [led the Court] to conclude that the legislature never intended for the dismissal and renewal statutes to overcome the statute of repose." 262 Ga. at 846 (1). Therefore, a medical malpractice plaintiff who voluntarily dismisses his suit may not refile it pursuant to OCGA § 9-2-61 more than five years after the defendant's alleged professional negligence.

15

inception of the lawsuit" and that her failures were incorrectly attributed to Dickerson, and knew that her role in the decedent's care was not apparent from the relevant records.[19] But the statute of repose imposes a bright-line rule; courts are not authorized to permit late filings on a case-by-case determination that the purposes of the statute are satisfied, which is arguably the case whenever a doctor has actual knowledge of a patient's pursuit of a judgment for alleged malpractice and knows that, but for the plaintiff's ignorance of the doctor's involvement in the care at issue, the plaintiff would have made the doctor a party defendant within the time allowed.[20]

---

[19] As the Supreme Court of Georgia has explained, the purposes of OCGA § 9-3-71 are to promote the State's interest in "eliminating stale claims" and its interest in facilitating insurers' ability "to adequately assess premiums based on known risks" in recognition of the fact that "passage of time makes it more difficult to determine the cause of injury, particularly in diseases where medical science cannot pinpoint the exact cause." *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657, 659 (1) (437 SE2d 308) (1993). See also OCGA § 9-3-73 (f) (Under OCGA § 9-3-73, which provides that the tolling provisions prescribed in OCGA §§ 9-3-90 – 9-3-99 apply to medical malpractice actions except as limited in OCGA § 9-3-93,"[t]he findings of the General Assembly . . . include, without limitation, that a reasonable relationship exists between the provisions, goals, and classifications of this Code section and the rational, legitimate state objectives of providing quality health care, assuring the availability of physicians, preventing the curtailment of medical services, stabilizing insurance and medical costs, preventing stale medical malpractice claims, and providing for the public safety, health, and welfare as a whole.").

[20] Notwithstanding the bright-line rule that a "statute of repose, unlike a statute of limitation, may not be tolled for any reason, including fraud, . . . in certain narrow circumstances, a defendant may be equitably estopped from raising the statute of repose as a defense." To make out a claim of equitable estoppel to bar a defendant from asserting

16

Admittedly, Arona did not volunteer to be sued along with PWH and Dickerson's estate when she learned of Sain's claims, but Sain has not identified any legal authority for abrogating the statute of repose under the circumstances presented here.[21]

---

a statute of repose defense, "the plaintiff must show fraud by offering evidence of a known failure to reveal negligence." (Citation, punctuation, and footnotes omitted.) *Balotin v. Simpson*, 286 Ga. App. 772, 773 (650 SE2d 253) (2007). "A patient must present evidence of a known failure to reveal [medical] negligence in order to show fraud[,]" including evidence that would support an "inference that the defendant doctor had knowledge of improper conduct on his part or that he tried to cover up such conduct in [some] way." (Citation and punctuation omitted.) *Hutcherson v. Obstetric & Gynecologic Associates of Columbus, P.C.*, 247 Ga. App. 685, 688 (2) (543 SE2d 805) (2000). See also *Esener v. Kinsey*, 240 Ga. App. 21, 23 (522 SE2d 522) (1999) ("The statute of repose is not tolled by fraud, but fraud, instead, gives rise to the doctrine of equitable estoppel, which prevents the defendant from asserting the defense of the statute of repose, because his or her own wrongful conduct gave rise to the defense and prevented the plaintiff from exercising reasonable diligence to learn the nature and cause of the injury attributable to the defendant and from bringing suit.").

[21] See *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. at 660 (3) (Where nothing in the record showed that the doctors who reviewed a biopsy and failed to diagnose the patient's skin cancer had any knowledge of their negligence, they were not estopped from asserting the statute of repose offense.); *Balotin v. Simpson*, 286 Ga. App. at 772-773 (Where plaintiffs filed an amended complaint in their pending malpractice action to add as a defendant to the action a radiologist who read a CT scan more than five years before the amendment and who failed to diagnose the patient's pancreatic tumor, and where no evidence showed that the radiologist knew that the scan showed a tumor that he failed to diagnose and withheld the information from the patient and his wife, the doctrine of equitable estoppel did not apply, and the plaintiffs' claim was barred by the statute of repose.), cert. denied October 29, 2007; *Hutcherson v. Obstetric & Gynecologic Associates of Columbus, P.C.*, 247 Ga. App. at 686-689 (2) (Where the plaintiff knew his wife died

17

Based on the foregoing, we hold that the medical malpractice statute of repose prevents a plaintiff from amending the complaint in a pending medical malpractice action to add an individual party defendant more than five years after the alleged negligence because, at that point, the plaintiff's cause of action against that particular defendant no longer exists. *Wright v. Robinson*, 262 Ga. at 846 (1); *Johnson*, 286 Ga. App. at 883. Because Sain's cause of action against Arona no longer existed after April 2017, the trial court erred in allowing Sain to amend his complaint to assert medical malpractice claims against her in June 2017. *Macfarlan v. Atlanta Gastroenterology Associates, Inc.*, 317 Ga. App. 887, 890-891 (1) (a) (732 SE2d 292) (2012) (OCGA § 9-3-71 (b) barred a medical malpractice action brought by the parents of a patient who died from colon cancer approximately nine years after the defendant gastroenterologist's allegedly negligent failure to obtain additional consultation and treatment, including biopsies and a colon resection, after diagnosing the patient with high-grade dysplaysia; the plaintiff's unsupported insinuations of fraud were insufficient to invoke the doctrine of equitable estoppel.).

---

of a heart attack, the doctor's attribution of the cause to a heart murmur rather than cardiomyopathy did not constitute sufficient evidence of fraud to create a jury question on whether the defendant was equitably estopped from raising the defense of the statute of repose.).

*Judgment reversed. Gobeil and Coomer, JJ., concur.*